UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| AARON ABADI, | ) |
| | ) |
|       Plaintiff | ) |
| | ) |
| v. | )   No. 1:22-cv-00228-GZS |
| | ) |
| WALMART, INC., et al. | ) |
| | ) |
|       Defendants | ) |

**RECOMMENDED DECISION AFTER PRELIMINARY REVIEW**

I previously granted Aaron Abadi's motion to proceed *in forma pauperis*. In conducting my review of his complaint pursuant to 28 U.S.C. § 1915(e)(2), however, I found his allegations of frequent cross-country travel inconsistent with his allegation of poverty and ordered him to show cause why his case should not be dismissed. *See* ECF No. 6; 28 U.S.C. § 1915(e)(2)(A) ("[T]he court shall dismiss the case at any time if the court determines that . . . the allegation of poverty is untrue . . . ."). Abadi has since provided additional information that sufficiently mollifies my concerns that he misrepresented his financial situation.[1] *See* ECF No. 7. Nevertheless, after further review, I recommend that the Court dismiss Abadi's complaint for failing to state a claim.

---

[1] I remain troubled by Abadi's vague explanation of how he was able to drive across the country without owning a car and by his failure to list his unemployment income on his financial affidavit. But I take Abadi's word that his financial affidavit accurately represented his overall financial situation. *See, e.g., Effinger v. Monterrey Sec. Consultants*, 546 F. Supp. 3d 715, 720 (N.D. Ill. 2021) ("[I]t appears . . . that plaintiff's inaccurate reporting of her wages was the result of some combination of carelessness, confusion, and failure to appreciate the need for precision, and that even if she had disclosed her income accurately, she would have qualified for [*in forma pauperis*] status. These circumstances do not warrant dismissal of her complaint."). Accordingly, the order to show cause (ECF No. 6) is terminated.

## I. Legal Standard

The federal *in forma pauperis* statute, 28 U.S.C. § 1915, is designed to ensure meaningful access to federal courts for persons unable to pay the costs of bringing an action. *See Neitzke v. Williams*, 490 U.S. 319, 324 (1989). When a party proceeds *in forma pauperis*, however, a court must "dismiss the case at any time if" it determines that the action "is frivolous or malicious, . . . fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Dismissals under section 1915 are often made on the court's own initiative "prior to the issuance of process, so as to spare prospective defendants the inconvenience and expense of answering" meritless complaints. *Neitzke*, 490 U.S. at 324.

When considering whether a complaint states a claim for which relief may be granted, the court must accept the truth of all well-pleaded facts and give the plaintiff the benefit of all reasonable inferences. *See Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). A complaint fails to state a claim when it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). An unrepresented plaintiff's complaint must be read liberally in this regard, *see Donovan v. Maine*, 276 F.3d 87, 94 (1st Cir. 2002), but must still contain "the crucial detail of who, what, when, where, and how" in order to provide fair notice of what the claims are and the grounds

upon which they rest, *Byrne v. Maryland*, No. 1:20-cv-00036-GZS, 2020 WL 1317731, at *5 (D. Me. Mar. 20, 2020) (rec. dec.), *aff'd*, 2020 WL 2202441 (D. Me. May 6, 2020).

## II. Allegations

Abadi's complaint contains the following allegations:

Abadi suffers from a diagnosed "sensory processing disorder" that causes him to experience "sensory overload" when he wears glasses, sunglasses, baseball caps, or masks on his head or face; he also finds it difficult to wear neckties and starched shirts. Complaint (ECF No. 1) at 5; *see* Exhibit C (ECF No. 1-4). When "activated," his disorder results in "extreme discomfort," headaches, and other "unbearable" irritation and renders him unable to function until he removes the offending object from his person. Complaint at 5-6.

In April 2021, Abadi came to Maine on a road trip. *Id*. at 10, 12. At the time, Governor Janet Mills had a standing executive order requiring face coverings in indoor public settings to curb the spread of COVID-19. *Id*. at 8; *see* Exhibit F (ECF No. 1-7). During his trip, Abadi entered the Walmart in Houlton and approached employee Barbara Marshall, "who was standing near the entrance." Complaint at 10. Abadi explained to Marshall that he had "a medical disability" that prevented him from wearing a mask and that he wanted "to be able to shop in the store without a mask." *Id*. He also told Marshall that federal and state law required a person with a disability be accommodated and showed her a state government webpage stating that "a person with a disability that cannot wear a mask" was "exempt from wearing a mask" under the executive order. *Id*.; *see* Exhibit G

3

(ECF No. 1-8). When Marshall, citing the executive order and store policy, said he could not shop in the store without a mask, Abadi showed her a note from his doctor explaining that he should not be required to wear a mask because of his "extreme sensitivity to touch" and noting that he was "not contagious" because he had "already recovered from COVID." Exhibit B (ECF No. 1-3); *see* Complaint at 10-11.

After Marshall continued to refuse to allow Abadi in the store without a mask, Abadi asked her to call her supervisor, Marie Hanson. Complaint at 11. When Hanson arrived, she "was visibly angry and rude" and "refused to look at" or discuss anything, saying only that Abadi "must leave immediately" pursuant to the executive order and store policy. *Id.* Abadi asked Hanson to call Walmart's "headquarters," but she said that he had to leave or she would call the police. *Id.* Neither Marshall nor Hanson offered Abadi an "alternative accommodation." *Id.*

Abadi's inability to "to get food and stop into stores caused him to end his trip early and leave the state." *Id.* at 12. The incident took an "emotional toll" on Abadi and caused him to experience significant anxiety "from being discriminated against" due to his disability. *Id.* Abadi spoke on the phone with the Houlton Walmart's "store manager" Mia Stanley "several weeks" after the incident; Stanley "apologized" for Marshall's and Hanson's "behavior" and indicated that the incident would not have occurred if she had been in the store at the time. *Id.*

### III. Discussion

Abadi brings claims against Walmart, Inc., and Wal-Mart Stores East, L.P. (collectively, "Walmart"), as well as Marshall, Hanson, and Governor Mills for

4

disability discrimination under the Americans with Disabilities Act (ADA), the Rehabilitation Act, and the Maine Human Rights Act (MHRA). *See id.* at 13-19, 21-25. He also brings claims under the Supremacy Clause of the United States Constitution and 42 U.S.C. §§ 1983, 1985, and 1986. *See* Complaint at 19-23, 25-26. He seeks compensatory and punitive damages as well as declaratory and injunctive relief. *See id.* at 26-27.

### a. ADA Claims (Count I)

Abadi first brings claims under Title III of the ADA, which prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Title III, however, allows only for injunctive (as opposed to monetary) relief and then only upon a showing of "ongoing harm" or "a colorable threat of future harm." *Dudley v. Hannaford Bros. Co.*, 333 F.3d 299, 304 (1st Cir. 2003). Abadi's complaint is devoid of any cogent allegations suggesting that he is suffering from ongoing discrimination by any of the Defendants or that he is likely to suffer from any future discrimination. Indeed, he does not allege that he would currently be prevented from shopping at the Houlton Walmart without a mask or, more fundamentally, that he—as an indigent resident of New York—has any concrete plans to return to Maine and/or the Houlton Walmart.[2] Accordingly, he fails to state a claim under Title III. *See id.* ("Title III is

---

[2] Abadi does say that Walmart's denial of access was continuing at the time he filed his complaint but does not elaborate. *See* Complaint at 14 ("Even to this date, the day of this being filed, [Abadi] was

5

not intended to provide redress for past discrimination that is unlikely to recur."); *cf. id.* at 306 (holding that a plaintiff had "shown a real and immediate threat of ongoing harm" when he lived near and was likely to patronize the grocery store that he accused of Title III discrimination and the store's "offending policy remain[ed] firmly in place" at the time of his action).[3]

### b. Rehabilitation Act Claims (Count VI)

Abadi also brings discrimination claims under Section 504 of the Rehabilitation Act, which provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). Abadi alleges that Walmart is subject to the Rehabilitation Act because it "has been a recipient of significant federal funds during the" COVID-19 pandemic. Complaint at 23.

Because Walmart is a private corporation, Abadi must plead sufficient facts showing that it constitutes a "program or activity" within the meaning of Section 504.

---

denied access . . . and that denial continues at the time of this filing."). This allegation, however, is inconsistent with what he says he was told after the fact by the Houlton Walmart store manager. *See id.* at 12 ("[The Houlton Walmart manager] apologized for [the employees'] behavior and confirmed that had she been at the store at that time, this would not have happened."). Moreover, the allegation is simply too vague and conclusory to plausibly show ongoing harm. *See Twombly*, 550 U.S. at 570.

[3] Even if Abadi had sufficiently alleged ongoing harm, his Title III claims against Governor Mills, Marshall, and Hanson would fail because he does not allege that they own, lease, or operate the Houlton Walmart within the meaning of the ADA. *See Guckenberger v. Boston Univ.*, 957 F. Supp. 306, 323 (D. Mass. 1997) (dismissing an ADA claim as to one university employee on the ground that the employee did not have decision-making power over the university's operations and was therefore not an "operator" of a public accommodation within the meaning of the ADA); *Howe v. Hull*, 874 F. Supp. 779, 787-88 (N.D. Ohio 1994) (holding that an individual does not operate a public accommodation when she is only enforcing institutional policy).

A corporation is a "program or activity" under Section 504 only if it "is principally engaged in the business of providing education, health care, housing, social services, or parks and recreation" or if the federal financial assistance it receives is extended to the entire corporation "as a whole." 29 U.S.C. § 794(b)(3)(A). Apart from a conclusory statement that Walmart meets the definition of a program or activity under Section 504, *see* Complaint at 24, Abadi does not allege that Walmart received federal funds as a whole or that Walmart is principally engaged in any of the enumerated businesses. Accordingly, he fails to state a plausible Section 504 claim against Walmart. *See, e.g.*, *Rosario-Rivera v. Wal-Mart de P.R.*, No. 20-1693 (PAD), 2021 WL 3639713, at *2-3 (D.P.R. Aug. 17, 2021) (holding that a threadbare allegation that Walmart received federal subsidies was insufficient to plead a plausible Section 504 claim); *Pletcher v. Giant Eagle Inc.*, No. 2:20-754, 2022 WL 814268, at *9 (W.D. Penn. Mar. 17, 2022) ("Plaintiffs have not pointed to any persuasive caselaw extending [Section] 504 to Giant Eagle, or any other grocery store or retailer providing similar goods and services. Several other courts have recognized that [Section] 504 does not apply to these types of entities.").

To the extent that Abadi brings Section 504 claims against Marshall and Hanson, those claims fail for the separate reason that there is no individual liability under the Rehabilitation Act. *See, e.g.*, *A.W. v. Jersey City Pub. Schs.*, 486 F.3d 791, 804 (3d Cir. 2007) ("Suits may be brought pursuant to Section 504 against recipients of federal financial assistance, but not against individuals."). Any Section 504 claim against Governor Mills also fails because Abadi has not alleged that she is a program

or activity that receives federal funds. *See, e.g.*, *Donahue v. Brownback*, No. 18-2055-CM, 2018 WL 5281546, at *4 (D. Kan. Oct. 24, 2018) ("Plaintiff has not pleaded any facts to show that [Kansas Governor Sam Brownback] is a 'program' or 'activity' that has received federal funds. Plaintiff has therefore not pleaded a prima facie case under the Rehabilitation Act, and the court dismisses this claim."), *amended on other grounds*, 2018 WL 6413225 (D. Kan. Dec. 6, 2018).[4]

### c. Supremacy Clause Claim (Count V)

Abadi further brings a claim under the Supremacy Clause of the United States Constitution on the basis that Governor Mills's executive order violated ADA laws and therefore contravened the Supremacy Clause. *See* Complaint at 22-23. This claim fails because the Supremacy Clause does not confer a private cause of action to enforce federal laws. *See Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324-27 (2015).

### d. 42 U.S.C. §§ 1983, 1985, and 1986 Claims (Counts II, III, & VII)

Abadi additionally brings claims under 42 U.S.C. §§ 1983, 1985, and 1986 against the Defendants for depriving him of his ADA and Rehabilitation Act rights

---

[4] Abadi does not specify whether he is suing Governor Mills in her individual capacity or in her official capacity as a surrogate for the State of Maine. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." (cleaned up)). Even if Abadi is suing Governor Mills in her official capacity, a Section 504 claim against her would still fail because the State of Maine is not a program or activity within the meaning of Section 504. *See, e.g.*, *Small v. Georgia*, 446 F. Supp. 3d 1352, 1360 (S.D. Ga. 2020) ("[T]he State of Georgia as a whole is not a proper defendant in this case. The State of Georgia is not a 'program or activity' under 29 U.S.C. § 794 and therefore it cannot have violated the Section . . . .").

under color of state law, conspiring to deprive him of those rights, and neglecting to prevent such a deprivation. *See* Complaint at 19-21, 25-26.[5]

Abadi's Section 1983 claims fail because that section does not serve as an alternative way to enforce the ADA or the Rehabilitation Act. *See, e.g.*, *Holbrook v. City of Alpharetta*, 112 F.3d 1522, 1531 (11th Cir. 1997) ("[A] plaintiff may not maintain a section 1983 action in lieu of—or in addition to—a Rehabilitation Act or ADA cause of action if the only alleged deprivation is of the [plaintiff's] rights created by the Rehabilitation Act and the ADA."); *Carpenter v. Sch. Dist. No. 1*, No. 16-cv-01706-RBJ, 2017 WL 1407041, at *8 (D. Colo. Apr. 20, 2017) (explaining that numerous courts have held that Congress intended the ADA and Rehabilitation Act to provide the exclusive means of enforcing those laws).

Abadi's claims under Sections 1985 and 1986 fail for the same reason. They also separately fail because his complaint contains only vague and conclusory allegations of a conspiracy that are insufficient to plausibly allege that the Defendants agreed to deprive him of his rights. *See Parker v. Landry*, 935 F.3d 9, 18 (1st Cir. 2019) ("[A] Plaintiff seeking to allege a [Section 1985] conspiracy must plausibly allege facts indicating an agreement among the conspirators to deprive the plaintiff of [his] civil rights. Without direct evidence of such an agreement . . . the plaintiff must plead plausible factual allegations sufficient to support a reasonable

---

[5] Although Abadi's Section 1983 claims are based on the deprivation of unspecified "civil rights," Complaint at 26, he clarifies with regard to his Section 1985 claims that he is complaining of the deprivation of his right to utilize "public accommodations" as well as the other rights enumerated in his complaint, *id.* at 19, which I take to mean his rights under the ADA and Rehabilitation Act in the absence of any other enumerated federal rights.

9

inference that such an agreement was made. A complaint containing only vague and conclusory allegations of a conspiracy fails to state a plausible claim under [S]ection 1985(3)." (cleaned up)); *Jackson v. Faber*, 834 F. Supp. 471, 476 (D. Me. 1993) (noting that a plaintiff's Section 1986 claim necessarily fails if his Section 1985 claim lacks merit).

### e. MHRA Claims (Count IV)

Finally, Abadi brings claims under the provision of the MHRA that prohibits "any person who is the owner, lessor, lessee, proprietor, operator, manager, superintendent, agent or employee of any place of public accommodation to directly or indirectly refuse, discriminate against or in any manner withhold from or deny the full and equal enjoyment to any person, on account of . . . physical or mental disability . . . any of the accommodations, advantages, facilities, goods, services or privileges of public accommodation." 5 M.R.S.A. § 4592(1) (Westlaw).

Absent a cognizable federal claim, this Court only has subject matter jurisdiction over Abadi's MHRA claims against Walmart, Marshall, and Hanson if he has sufficiently pleaded facts establishing diversity jurisdiction.[6] *See Woo v. Spackman*, 988 F.3d 47, 53 (1st Cir. 2021) ("[A] party asserting the existence of diversity jurisdiction . . . must allege facts sufficient to show that the requirements for such jurisdiction are satisfied in the particular case."). Under 28 U.S.C. § 1332(a), federal courts have jurisdiction to hear and determine suits between citizens of

---

[6] It would be inappropriate for this Court to exercise supplemental jurisdiction over Abadi's MHRA claims after the early dismissal of his federal claims. *See, e.g.*, *Zell v. Ricci*, 957 F.3d 1, 15 (1st Cir. 2020) (noting that it is generally an abuse of discretion to retain supplemental jurisdiction over state law claims when all federal claims have been dismissed early in a case).

10

different states if the amount in controversy exceeds $75,000. "Diversity jurisdiction exists only when there is *complete* diversity, that is, when no plaintiff is a citizen of the same state as any defendant." *Gabriel v. Preble*, 396 F.3d 10, 13 (1st Cir. 2005).

Abadi has failed to plead adequate facts to establish complete diversity. For example, he alleges only that he "resides in" New York and that Marshall and Hanson work at the Houlton Walmart. Complaint at 2-3. But allegations about where a party resides or works are insufficient to establish that party's citizenship for purposes of diversity jurisdiction. *See, e.g.*, *Keene Lumber Co. v. Leventhal*, 165 F.2d 815, 818 n.1 (1st Cir. 1948) ("The individual defendants may have places of business in Boston without being citizens of Massachusetts. And it has been held that citizenship of an individual is defectively pleaded when the allegation is merely that he [or she] is a 'resident' of a certain state."); *Hasson v. Koenig*, No. CV 12-02584-GW(PLAx), 2012 WL 12878592, at *1 (C.D. Cal. Apr. 17, 2012) (noting that a plaintiff failed to adequately plead diversity jurisdiction when he pleaded only where he resided and where a defendant was employed rather than the parties' actual citizenships).

"Generally, when a federal court dismisses a case for lack of subject matter jurisdiction, the dismissal should be without prejudice. This is because a dismissal for lack of subject matter jurisdiction is not a decision on the merits, and many jurisdictional defects may be cured." *United States ex rel. Poteet v. Bahler Med., Inc.*, 619 F.3d 104, 115 (1st Cir. 2010) (cleaned up). In this instance, it is conceivable that Abadi could cure the defects noted herein and establish diversity jurisdiction with regard to his MHRA claims against Walmart, Marshall, and Hanson. Accordingly,

his MHRA claims against those Defendants should be dismissed without prejudice. However, because he cannot change the fact that Governor Mills is not an "owner, lessor, lessee, proprietor, operator, manager, superintendent, agent or employee of" the Houlton Walmart such that she is subject to the public accommodations provision of the MHRA, 5 M.R.S.A. § 4592(1), his MHRA claims against her should be dismissed with prejudice.

### IV.  Conclusion

For the foregoing reasons, I recommend that the Court (1) **DISMISS** with prejudice Abadi's claims under the ADA, Rehabilitation Act, Supremacy Clause, and 42 U.S.C. §§ 1983, 1985, and 1986 for irremediably failing to state a claim upon which relief may be granted, (2) **DISMISS** with prejudice Abadi's MHRA claims against Governor Mills for irremediably failing to state a claim upon which relief may be granted, and (3) **DISMISS** without prejudice Abadi's MHRA claims against Walmart, Marshall, and Hanson because it is conceivable that he may be able to cure the deficiencies noted herein.

### *NOTICE*

*A party may file objections to those specified portions of a Magistrate Judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de novo</u> review by the District Court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

***Failure to file a timely objection shall constitute a waiver of the right to <u>de novo</u> review by the District Court and to appeal the District Court's order.***

Dated: October 17, 2022

<u>/s/ Karen Frink Wolf</u>
United States Magistrate Judge
